## WATSON & a. *v.* WALKER & a.

Affidavits will not be received by this court upon a case reserved or transferred, to show what were the proceedings of the judge who presided at the trial of a cause in empannelling the jury, though the case certified to this court provides that testimony of that nature may be taken by the parties in relation to his proceedings in that respect, and laid before this court for such purposes as may be deemed legitimate. The statement contained in the case, or bill of

exceptions, is the only evidence to be considered of the facts involved in the inquiry whether the proceedings of the judge were legal.

Matters within the discretion of the court in which the cause was tried, will not ordinarily be revised upon a case made for this court, for the purpose of determining whether the discretion has been properly exercised.

It is within the discretion of the court to organize the traverse juries from the list of jurors returned, in any manner which the court may deem proper, and rearrange and organize them anew at any time, either with or without reference to the trial of a particular cause; and this may be done by removing any number of the jurors from one jury, and substituting others from the other jury, without motion of either party, and when no cause of challenge exists against the jurors so removed.

It is not the right of either party to have a cause tried by a particular jury, as they may happen to be organized when the cause comes on for trial, though the practice may be to try the causes in their order upon the trial-list by the two juries alternately, and according to that practice the cause would come in order before that particular jury.

The defendants, having invented a stocking loom, and obtained letters patent of the United States therefor, sold to the plaintiffs, for the consideration of one thousand dollars, half the right thereto for all territory without the United States. It was at the same time covenanted between the parties that the plaintiffs should, as soon as practicable, send an agent to Europe, for the purpose of exhibiting the invention and selling the looms, and the right to make, use, and vend the same without the United States; that the plaintiffs and their agent should make proper efforts to dispose of the looms and rights to the best advantage; that if, upon using such efforts, the plaintiffs and their agent should be unable to sell to the amount of one thousand dollars and all the expenses of the agency, then the defendants would repay to the plaintiffs said one thousand dollars and the expenses of the agency, or convey to them one half of the right within the United States. The plaintiffs sent one Reynolds to Europe as their agent, who entered into a contract with Brettle & Co., in London, agreeing " to proceed forthwith to Scotland for the purpose of consulting engineers, or men of science skilled in the construction of machinery, and by all needful experiments, additions, and alterations, to improve the machine, so as to enable it, by means of steam power applied thereto, to manufacture and produce a perfect and entire stocking; and, as soon as the machine was so perfected, to deliver it to Brettle & Co., and leave it in their possession two months, during which Brettle & Co. should have the option to become the purchasers of the invention for the sum of £15,000." The plaintiffs brought their action of covenant broken to recover the one thousand dollars and the expenses of the agency. Upon the pleadings an issue of fact was raised, whether the plaintiffs had given notice to the defendants of their failure to make sales to the amount of one thousand dollars and the expenses of the agency, within a reasonable time after the execution of the covenant. The court instructed the jury that the Brettle contract was not warranted by the covenant entered into between the parties to the suit, and that, consequently,

Watson *v.* Walker.

nothing which Reynolds had done under it could be deemed to have been done in the performance of his agency, so far as the defendants were concerned, unless the Brettle contract was made known to the defendants, and they assented that Reynolds might go on under it and try to make the alterations required by it.—*Held*, that the instructions were erroneous, and that the question should have been submitted to the jury whether, under the circumstances in the making of that contract, and in the efforts made in pursuance of it to improve the machine, the agent was or not using reasonable and proper efforts to effect sales of the machines and right, as contemplated by the covenant.

COVENANT BROKEN, upon an agreement set forth in the case as reported in 3 Foster 471. The trial was had upon the same pleadings as in that case, except that an issue of fact was joined upon the fourth plea — the issues upon the whole pleadings being : 1. The general issue ; 2 and 3, whether the plaintiffs sent an agent to Europe as soon as practicable after the making of the agreement, and made all reasonable and proper efforts to exhibit and sell the machines ; 4, whether the plaintiffs, within a reasonable time after the making of the agreement, gave notice to the defendants of their failure to make sales to the amount of one thousand dollars and the expenses of the agency ; and, 5, upon a set-off pleaded.

When the cause came on for trial, it was understood by the presiding judge that the parties had strong preferences for different juries ; the plaintiffs desiring to have the trial by the first and the defendants by the second jury. The verdict last rendered before this cause came on for trial was one directed by the court in a trial which occupied but a few minutes before the second jury, and the next preceding that was also rendered by the second jury. The trial which resulted in the verdict last mentioned was commenced and completed while the first jury were out of the court-room, deliberating upon their verdict in the case which was tried next preceding the case last mentioned. Each jury had tried two indictments, in addition to the one before the second jury in which the court directed the verdict, but the first jury had been employed about twice as long as the second. The judge, without the suggestion or request of either party, made inquiries of all the jurors upon both panels as to

any impressions received by them relative to the cause, and from their answers the judge was of the opinion that two of the first and three of the second jury had received such impressions respecting the cause that they ought not to sit upon the jury that might try it. The judge then suggested to the counsel that the parties might strike out the names of such of the remaining jurors upon both panels as were objected to by them, leaving twelve to constitute the jury for the trial of the cause. The defendants' counsel assented to the arrangement, and objected to the foreman and two other members of the first jury. The plaintiffs' counsel insisted upon his right to have the cause tried by the first jury, but suggested, if overruled in this by the court, two members of the second jury as objectionable to his clients. The judge directed the clerk to empannel a new jury, by omitting the five who had impressions which rendered them objectionable, in the opinion of the court; the five who were suggested as objectionable to one or the other of the parties, one who was excused on account of illness, and the foreman of the second jury; it being thought proper by the judge that a new foreman should be appointed; and the new jury, as thus composed, consisted of seven members of the first jury and five of the second, and one of the seven was appointed foreman. The case provides that either party may lay before this court depositions taken with notice relating to said matters, to be considered by them for such purposes, if any, as may be deemed legitimate.

The following rulings were made by the court in the progress of the trial, and excepted to by the plaintiffs:

1. The plaintiffs introduced a letter, dated January 7, 1845, from McIntire, one of the defendants, to Austin, one of the plaintiffs, and read to the words, " rightly managed," inclusive. The court ruled that the whole letter must be read. The letter is as follows:

" PORTSMOUTH, JANUARY 7, 1845.

" Mr. AUSTIN: *Dear Sir,* — You requested me to write you in regard to our settlement. I have seen Walker about it, and

he leaves it altogether with me. If you think you have made a worse job than we have, I suppose we ought not to charge you anything more than the two machines — one hundred and fifty dollars ; notwithstanding, my impression has been, and now is, that something handsome might have been made on that patent in England, rightly managed.

" I have had a letter from Mr. Foss, one of my men who went to England with Dorr, with the late patent. When he wrote he had been in Liverpool only about eight days, and they had received some very good offers, and thought they should close a bargain without going to London. If they should sell for two or three hundred thousand dollars, I should always feel provoked with Reynolds. When you send the above sum, we will send you our receipts in full of all demands.

" Yours truly,      J. McIntire."

2. Reynolds, the person sent by the plaintiffs as their agent to Europe, having been asked if McIntire had not admitted to him that the invention referred to in the above letter was not the original Walker patent, and having answered in the negative, the plaintiffs' counsel proposed to hand him a letter, written by McIntire to him, in order to refresh his memory. It was objected that the letter was not written by the witness, and the court would not permit it to be passed to the witness.

3. When Reynolds was sent out to England by the plaintiffs, there was no loom in use there except the hand loom. The plaintiffs' counsel having made it a point that Walker's loom was worthless, the court permitted a weaver, who was familiar with both looms, to state the amount of work which could be done upon one, as compared with the other.

Reynolds, having testified that he effected no sales in Europe, and that he did not leave any negotiations or business in respect to the patent undetermined or unfinished, Charles Paul was permitted to testify that he inquired of Reynolds, after his return, how he made out in the old country, and he replied that he hardly knew ; it was not settled ; it took a good while to settle business there, and he did not settle before he came away ; to all which rulings the plaintiffs excepted.

On the 12th of January, 1841, an agreement was entered into at London between Reynolds and Brettle & Co., as follows: "That in consideration of one hundred pounds, Reynolds shall forthwith proceed to Scotland, or elsewhere, for the purpose of consulting men of science, learned in the construction of machinery of a similar kind, and by all needful experiments, additions and alterations, so alter and improve the present construction of the machine as to enable it, by means of steam power applied thereto, to manufacture and produce a perfect and entire stocking; that as soon as the machine shall be so perfected, he shall deliver the same to said Brettle & Co., and leave it in their possession two months; that during said two months said Brettle & Co. shall have the option to become the purchasers of the invention for the sum of £15,000, but if they should not within that time elect to become the purchasers at such price, the said Reynolds, from and after that time, shall be at liberty to sell the same to others; that neither of the parties shall or will disclose the nature of said invention to any person or persons whomsoever, except so far as may be necessary in perfecting the said machine, as herein before mentioned."

Immediately upon the execution of this agreement, Reynolds went to Scotland, and was there engaged until the spring of 1844, in efforts to make the alterations required by the contract, but with only partial success. On the 1st of April, 1844, Brettle & Co. informed him, by letter, that he was at liberty to dispose of the right to others. He continued his experiments upon the machine from April to October, 1844, informing Brettle & Co. of his supposed improvements.

He also made some slight efforts to sell the invention in Scotland. In October, 1844, he left Scotland, and in November following returned to Dover, in this State. In September, 1846, the plaintiffs informed the defendants that no sales had been effected, and requested a repayment of the $1000 and the expenses of the agency.

The court instructed the jury that the contract with Brettle & Co. was not warranted by the contract between the parties to

this suit, and that, consequently, nothing which Reynolds did under it could be deemed to have been done in the performance of his agency, so far as the defendants were concerned, unless the contract with Brettle & Co. was made known to the defendants, and they assented that Reynolds might go on under it, and try to make the alterations required by it; to which the plaintiffs excepted.

The jury returned a verdict for the plaintiffs upon the first, second and third issues, and for the defendants upon the fourth and fifth. The plaintiffs moved to set aside the verdict upon the fourth issue, and also moved for judgment in their favor, notwithstanding the verdict upon that issue; and for the assessment of their damages by a jury, because that issue is an immaterial one, as the plea on which it is joined alleges that notice was not given to the defendants within a reasonable time after the signing of the contract, and not, as it should, that it was not given within a reasonable time after the efforts to sell had been abandoned.

*Christie & Kingman,* for the plaintiffs.

I. This cause should have been tried, and it was the right of the plaintiffs to have it tried, by the first jury; because, by the usual practice and alternations in the trials in court, it came to that jury. The jurors upon that panel were all qualified to sit and try the cause, as appears from the depositions taken and submitted to the court, in pursuance of leave in the case granted; while three of the second jury said they had heard a former trial of the cause, and had formed an opinion thereon, and were therefore disqualified; and one other was sick, and unable to sit in the cause, and was therefore discharged.

II. The presiding judge, without any motion or suggestion of either party, of his own mere will and pleasure, and, as we conceive, without and against law and right, interrogated each member of the first jury, severally, as to his knowledge, &c., of the case; and notwithstanding they all, by their answers, appeared to be free from bias, and qualified to sit in the case, he left them,

and proceeded in like manner to interrogate the members of the second jury. This the judge had no right to do. The jurors, when properly drawn, returned, sworn and impanneled, are to be received and treated by the court as lawful and competent triers, until exception or objection be taken or raised, and evidence adduced to sustain the same, or motion be made by one of the parties that one or more of the panel to which the cause is about to be committed, be interrogated, as is provided in the statute. The statute confers the power upon the court to interrogate the jury, as is therein provided, only upon the motion of a party; clearly implying that without such motion the court have no such right or power. Comp. Stat. 449, sec. 22.

In the case of *Bickham* v. *Bessant*, 1 Coxe 220, it was held " that a juror had no right to challenge himself, and that, though good cause of challenge subsists, yet, if neither party will take advantage of it, the court cannot reject him." So in *Greer* v. *Norvill*, 3 Hill S. C., " that after the parties announce themselves ready for trial before a particular jury, the judge cannot discharge one of that jury at the instance of one party, contrary to the consent of the other, unless the ground of challenge be legally and properly sustained."

III. The court erred in holding as they did that two of the first jury, whose depositions are submitted, were, upon their answers, incompetent and disqualified. In *State* v. *Benton*, 2 Dev. and Bat. N. C. 196, U. S. Dig. 686, sec. 14, it was held, " that if a juror had not definitely made up his mind on the question at issue, he is not liable to exception, though he has read or heard concerning it." So in *Durell* v. *Mosher*, 8 Johns. 347, where a juror said that if the reports of the neighbors were correct the defendant was wrong and the plaintiff right, held that this was not a sufficient objection to his being sworn and impanneled.

IV. The court, at the suggestion of the defendants' counsel, and without any just or legal cause, rejected and struck from the first panel five of the jurors, and thus, under the direction or suggestion of the defendants' counsel, struck or packed the jury.

V. The court had no right to break up the panels, as they had been organized for the trial of the cases, and then to organize a new and special panel for the trial of this cause, in the manner in which it was done ; and especially had the court no right to do this at the suggestion and under the direction of the defendants' counsel, as was the fact here.

VI. The court, against the consent of the plaintiffs, impanneled a struck and packed jury for the trial of this cause, and themselves selected the individual jurors by name that should sit in the case, and rejected five of the first and regular panel, at the request of the defendants' counsel, and also the foreman of the second panel, of their own pleasure, and without any just or legal cause in the case of either of the six individuals. It is no cause of challenge to a juryman that he is a brother of the counsel of one of the opposite party. *Piper* v. *Lodge,* 16 S. & R. 214 ; *People* v. *Norton,* 13 Wend. 9 ; *Cain* v. *Ingham,* 7 Con. 478.

We pass but do not intend to waive the exceptions to the rulings of the court upon the several points of evidence, as we still deem them erroneous and prejudicial to the plaintiffs.

VII. The instructions given to the jury were erroneous in that they charge, as matter of law, that the contract with Brettle & Co. was not warranted by the contract between these parties, and that nothing done under it could be deemed to have been done in the performance of his agency, unless the contract was made known to the defendants, and they assented. We submit that it should have been left to the jury, upon all the evidence, as it was on both the former trials, to determine whether entering into and acting under that contract, as Reynolds did, was consistent with and in pursuance of the due execution of his agency, and the objects of his mission. We conceive that it was so, and that the jury must have found it so. It was, to all human probability, the most certain and likely means of effecting a sale, and thus accomplishing the objects and promoting the interest of all concerned.

VIII. The fourth issue, which is found for the defendants, is an immaterial one, and the three material issues having been found

for the plaintiffs he is entitled to have his damages assessed by a jury, and then to have judgment, deducting the amount of the set-off. 1 Chit. Plead. 656, and cases cited in notes; 4 B. & C. 152, and same case; *Lambert* v. *Taylor*, in 6 Dowl. & Ry. 188.

*Emery* and *Wells*, for the defendants.

I. The selection of the jury was a matter within the discretion of the judge who tried the cause. *Kinnicut* v. *Stockwell*, 8 Cush. 73; *Borden* v. *Borden*, 5 Mass. 79. In this case the discretion was properly exercised.

II. The instructions of the court to the jury were correct and proper. By them the court only gave an interpretation and construction to the contract between the parties to this suit. Such is the province and duty of the court. 1 Greenl. Ev. 400, note 4; Story's Agency 63, note 1; Paley's Agency, by Lloyd, 198; *Bagley & als.* v. *Giles & a.*, 3 B. & C. 422; *Altham's Case*, 8 Co. 308; *Dowman's Case*, 9 Co. 13; Brown's Legal Maxims, 43, 44, 45, and authorities there cited.

The other several rulings of the court were correct.

III. The issue upon the fourth plea was a material one. It was so settled when this case was formerly before the court. 3 Foster 471.

SAWYER, J. The evidence submitted to this court for the purpose of showing what were the proceedings of the judge who tried the cause in empanneling the jury, cannot be considered in the determination of the case. The provision of the case, that testimony may be taken and laid before the court in relation to his proceedings, for such purposes as the court may think legitimate, must be understood to mean that if it shall be deemed competent by this court for the parties to go into proof of what was done by the judge in this respect, then such proof may be adduced.

The facts undertaken to be shown by the depositions are what was said and done by the judge in organizing a jury for the trial

of the cause. These proceedings of the judge are no more to be proved in such mode, in order to present them for revision by this court, than are his rulings upon questions of evidence or his instructions to the jury. His statement of the proceedings, as drawn up and certified to this court, or in a bill of exceptions allowed, is the only mode of bringing them before this court for that purpose, and the statement thus made is conclusive. No evidence is to be received to contradict or vary it. In cases when a question is to be considered by the Court of Common Pleas, or by the judge of this court presiding at a trial term, upon evidence to be submitted, and the consideration of the question is referred to this court by a case transferred or reserved, the case may provide for taking testimony and submitting it directly to this court. It will then be considered as making a part of the case, in the same manner as if taken and presented to the judge and by him referred to this court. But to admit the parties, even if the provision of the case would warrant it, to resort to evidence beyond the statement of the judge, as contained in the case, to prove the proceedings of the judge himself in the course of the trial, would be to open the door to a great variety of questions arising upon his sayings and doings in the progress of the trial, from the first calling of the cause to the recording of the verdict, upon each of which an indefinite amount of conflicting testimony might probably be obtained from the bystanders; and the very proposition to decide which, upon any evidence but his statement of the facts, would be virtually an impeachment of his integrity or of his understanding, and would be in the highest degree derogatory to the dignity of judicial proceedings.

The statements contained in the case upon those matters cannot be modified by proof taken to contradict or vary them, nor can they be supplied by such proof, where he has omitted to state them. If material facts in relation to such proceedings are omitted, or not fully stated, an amendment of the case is the only mode of supplying the omission.

In England, prior to the statute of 3 Geo. II., chap. 25,

where an issue of fact was joined, a jury was summoned specially for the trial of that cause, and a separate panel was returned for every separate cause. By the provisions of that act, one and the same panel, containing not less than forty-eight nor more than seventy-two jurors, is required to be returned for all causes to be tried at the same assizes. The names of the jurors so returned being written on tickets, they are to be placed in a box, and when each cause is called, the twelve whose names are first drawn from the box, if present, and not challenged or excused, shall be sworn.

By statutory enactments in New-York, New-Jersey, and many other States, the same mode is adopted in organizing the jury; a new jury in fact being called for every cause, though from a panel returned for the term and for all causes then to be tried. The mode thus prescribed by the statute for organizing the jury must be strictly followed. No discretion is allowed to the judge. The party has the right to a trial by the jury so drawn, and consequently no juror can be set aside by the court upon its own motion, nor upon the motion of a party, except upon being challenged for a cause which the law recognizes as sufficient.

Our statute is silent upon the subject of the mode in which jurors shall be empanneled for the trial of causes in ordinary cases. The statute directs that venires shall be issued for such number of jurors as the court may require; and when they are in attendance, in obedience to the summons, all subsequent proceedings in relation to forming a jury for the cause are left to the discretion of the court.

The practice has generally been to have in attendance a sufficient number of jurors to constitute two juries, with a few supernumeraries, to supply vacancies happening from sickness or the incompetency of a juror to sit in a particular cause, and to arrange them at once into two juries. In calling off the jurors for this purpose, they may be called by any rule which the court pleases to prescribe. Sometimes it is done by calling them in the alphabetical order of their names, or of the names of the towns from which they are drawn; sometimes in the order in

Watson *v.* Walker.

which they may happen to be arranged by the clerk upon the list ; the names being entered on the lists as the venires are returned ; or any other rule may be observed, or they may be called off arbitrarily, without conforming to any rule.

The practice has also generally been to maintain this organization of the juries substantially as first arranged, until they are finally discharged, and to try the causes in the order in which they come up for trial before the two juries alternately.

In neither of these particulars, however, has the practice been entirely uniform. In alternating between the two juries, some judges have acted upon the rule that every cause in which the jury have retired to consult upon their verdict, or in which a verdict is taken, even if it be by order of the court, in a cause opened before them, was to be accounted a trial, and the next cause in order was to be given to the other jury ; while other judges have confined the practice of alternating to cases in which the jury have been sent out to consult. Probably all judges have departed from the rule by which they have ordinarily been governed, whatever the rule may have been, in cases where it has happened that one of the juries has been subjected to a greatly disproportionate share of duty, or may have been detained out of the court room in consultation upon their verdict, or in taking a *view*, beyond the time required for the trial of the next cause in order by the other jury. Nor has the practice been uniform to maintain the organization of the juries substantially unchanged. Instances have occurred of breaking up the arrangement first made, in order to make a new distribution of the jurors ; sometimes for reasons arising out of the case to be tried, and sometimes for reasons connected with the jurors themselves. In one instance this was done because it was found that one of the juries, as arranged, was composed of such discordant elements in the peculiar characters of certain of the jurors, that, after several disagreements, there was reason to apprehend they would return no verdict in any case. There is no rule of law and we can perceive no sound principle which forbids that the juries may be reärranged whenever and as often as the court

may see cause for so doing. The practice of continuing the same twelve men together as a jury for the trial of several successive causes, is sometimes attended with very great disadvantages. A difference of opinion at the outset between leading men upon the jury is apt to divide the whole jury into parties, the divisional line of which is not unlikely to be perceptible in all the succeeding causes submitted to them. While the practice continues of keeping up their organization, as the general rule, through the entire period of their service, it would be unwise to deny to the court the power to reärrange them whenever there was seen to be occasion for so doing. In many of the States of the Union it is deemed so important that a reärrangement shall frequently be made, that it is required by statute to be done at each trial, following the English and New-York statutes.

The party in this State has no right to claim that his cause shall be tried by any particular jury, or to insist that any particular juror shall be retained upon the jury before which the cause is about to be opened, merely because there is no legal ground for challenging him. The statute relating to juries, Rev. Stat., chap. 176, sec. 21, gives him the right to inquire of the juror, upon his oath, as to his disqualification, and prescribes the interrogatories to be propounded to him when the inquiry is moved; but the provision is not to be understood as limiting the power of the court. When, as in this case, the judge discovers that one of the parties has a strong preference for one of the juries, as they happen at the time to be organized, and the other party has a like preference for the other jury, and that it is understood that a trial before either may give to one party or the other a supposed advantage, this may furnish just ground for a reärrangement, in making which the most judicious course would clearly seem to be, to set aside such of the jurors upon both panels as were particularly objectionable to either party, although the objection might not amount to a legal cause of challenge, and to form a new jury, composed of those from either panel against whom no such objection existed.

The rule which the judge may have practically prescribed for himself, that he will try the causes alternately by the two juries, is to be understood as one which he has adopted merely for the convenient transaction of the business of the court; which he may dispense with in a particular case, or discard entirely, at his pleasure. These matters must rest entirely in his discretion. This court does not ordinarily interfere with the proceedings of the courts below in relation to matters resting entirely in their discretion, unless the question of discretion is referred to this court for our determination. *Janvrin* v. *Scammon*, 9 Foster 280 ; *Rochester* v. *Roberts*, ib. 360.

Several questions are raised by the case upon the exceptions taken by the plaintiffs to evidence introduced by the defendants, which, however, would seem to have become immaterial by the finding of the jury in favor of the plaintiffs upon the second and third issues. These are the questions in relation to the introduction of the entire letter from McIntire to Austin of the 7th of January, 1845, in relation to refreshing the recollection of the witness Reynolds, by means of the letter from McIntire to him of the 6th of January, 1845, and in relation to the evidence of the comparative amount of work which could be done upon the Walker loom, and the common hand-loom in use in England.

The testimony upon these points was not of a character to have any bearing upon the fourth and fifth issues, which alone were found for the defendants ; and it cannot be perceived how the rulings in relation to this testimony could have occasioned any prejudice to the plaintiffs, however erroneous they may have been. We do not, however, discover any error in them. They would seem to be correct in principle. As to the letter of the 7th January, it is obvious that it could not be determined by the court, from an inspection of the letter, whether the second paragraph did or did not refer to the same patent right which was the subject of the agreement between the parties. Whether it did or not, was a question for the jury. If it did, then it related to the same subject as the first clause, for that

manifestly alludes to transactions connected with the attempted sales of the Walker patent in England. There can be no doubt that when a part of a letter or other writing, relating to a particular subject, is read in evidence, all other parts relating to the same subject may be read. If it is doubtful whether the other parts do relate to the same subject, but it is apparent from the terms employed that they may, then the whole may be submitted to the jury, with proper instructions, to consider or disregard the other parts, as they may find that they do or not relate to the same subject.

The attempt to aid the memory of Reynolds by means of the letter of the 6th of January, was properly overruled. To prompt his memory by repeating over to him what McIntire might have said in his hearing, of precisely the same tenor as the contents of the letter, would probably be conceded to be inadmissible ; and it can make no difference in this respect that the statement was contained in a letter instead of being made orally.

The evidence, showing the amount of work which could be done on a loom of the kind patented, as compared with the hand-loom, would be competent upon the question of the value of the patent ; and the plaintiffs, having made that a point, cannot object to the evidence, although the point may be an immaterial one in the case. If irrelevant on that ground, then it would seem to be immaterial in any view, and the verdict is not to be disturbed on that account.

If the testimony of Charles Paul as to the statements of Reynolds was introduced to contradict Reynolds, it was competent for that purpose. The testimony of Reynolds that he had made no sales, and had left no negotiations open in respect to the patent, being material upon the question whether the efforts to sell had proved unavailing, and had been abandoned, and if so, then it was competent to contradict him by proof of his having given a different account of that matter, and the testimony of Paul was of that character. The case does not find that it was introduced for that purpose, but it would seem to be implied from the connection.

Upon all the grounds which have thus far been the subject of discussion, the verdict may well be sustained.

But in the instructions given to the jury in relation to the contract entered into between Reynolds and Brettle & Co., we think the court erred. The instructions were that this contract was not warranted by the agreement entered into between the parties, which is the subject of this suit, and that consequently nothing which Reynolds did under it can be deemed to have been done in the execution of his agency, so far as the defendants are concerned, unless the Brettle contract was made known to the defendants, and they assented that Reynolds might go on under it, and try to make the alterations required by it. The agreement which is the foundation of this suit provides that the plaintiffs, as soon as practicable and convenient, shall send an agent to Europe, for the purpose of exhibiting the invention and of selling the looms and the right of making, using, and vending them, and that the plaintiffs and their agent shall make all suitable and proper efforts to do this to the best advantage. The agreement further provides, that if, in case of their using all proper and reasonable exertions to sell the right in Europe, they shall be unable to sell to the amount of one thousand dollars and all the expenses of the agency, then the defendants agree to repay to the plaintiffs the sum of one thousand dollars, and all the reasonable expenses of the agency, or to convey to them one half of the patent within the United States.

When this cause was before the court upon a former occasion, 3 Foster 471, it was decided that the plaintiffs were not entitled to recover the one thousand dollars, and the expenses of the agency, under this stipulation in the contract, unless notice of the failure to make sales and of the abandonment of efforts to sell, was communicated to the defendants within a reasonable time after the execution of the covenant. It was material, then, in this case to show when those efforts to sell were abandoned, because the determination by the jury of the question whether notice was given within a reasonable time after the execution of the covenant, might depend upon the other question, when were

the efforts to sell discontinued ? So long a period might be suffered to elapse after the efforts were discontinued before the notice was given, that it might properly be pronounced no notice within a reasonable time after the execution of the covenant. The plaintiffs were to have a reasonable time after the execution of the covenant within which to make those efforts. This, of course, is to be construed a reasonable time for that particular purpose — to sell and make efforts to sell. So, too, they were to have a reasonable time after the execution of the covenant to give notice of their failure and abandonment of efforts, and this also is to be construed a reasonable time for that particular purpose. It is obvious that these different reasonable times, though dating from the same event — namely, the execution of the covenant — may, nevertheless, widely differ as to the periods when they terminate. It was not to be supposed that notice of the abandonment of efforts to sell would be given upon the instant of their ceasing. An interval of longer or shorter duration must undoubtedly have been expected to intervene. Now, so long a period might elapse before reasonable efforts to sell were made, as to exonerate the defendants from liability on that ground, and this inquiry is raised by the pleadings which resulted in the second and third issues. Upon those issues the jury have found for the plaintiffs ; thus establishing the fact that they made all proper and suitable efforts to sell within a reasonable time from the execution of the covenant. But after those efforts were made and abandoned, so long a period might elapse before notice was given to the defendants as to exonerate them on that ground. This was the inquiry involved in the issue on the fourth plea, and this issue, being found for the defendants, the fact was thus established that notice was not given within a reasonable time from the execution of the covenant. This finding, however, was under instructions from the court, that the Brettle contract was not warranted by the terms of the agreement between these parties, and that, consequently, nothing which was done under it could be deemed to have been done in pursuance of the agency, so far as the defendants are concerned,

unless they had notice of it and assented to it. The jury, then, in finding that notice was not given of the abandonment of the efforts to sell within a reasonable time after the execution of the covenant, must have proceeded upon the ground that, as matter of law, all the time from January, 1841, to April, 1844, devoted by Reynolds to the purpose of making the sale agreeably to the Brettle contract, was not devoted to the business of his agency. They were not at liberty, therefore, to consider whether, under the circumstances, Reynolds, either in making that contract or in his efforts to improve the machine so as to effect a sale according to .its terms, was engaged in the reasonable efforts to sell which the terms of the covenant required. On the other hand, they were required to consider the three years and three months in which Reynolds was thus engaged as so much time which they must take into the account, in determining whether there was unreasonable delay in giving notice of the abandonment of efforts to sell. In ruling this as matter of law, the court erred. It should have been submitted to the jury to decide whether, under the circumstances, the proceedings of Reynolds in this respect were or not reasonable efforts to make the sales contemplated by the covenant. No particular course of procedure is therein specified. It is only required that suitable and proper efforts be made. Whether the plaintiffs or their agent were or not at liberty to proceed in one way or another, would depend upon the question whether it would or not be proper thus to proceed under the circumstances in which the agent was placed, taking into view the subject-matter and objects of the contract. It cannot be said by the court, as matter of law, that the circumstances under which Reynolds was placed in England in January, 1841, in reference to sales of the right, were not such as to warrant him in making this or that conditional contract. It might be found by the jury that, under those circumstances, the most judicious course for him to pursue, and the one best calculated to promote the interests of all concerned, was to make the attempt to sell in the manner provided for in the Brettle contract. The chances of effecting a favorable

sale might be so great, and the risk of expense so small, that the jury might find it to be unreasonable neglect on the part of the agent not to have seized upon the opportunity thus offered for attempting to effect the purposes of his agency, even if required to abandon all efforts for a time in other directions. On the other hand, he might be found to have acted unreasonably and without sound discretion in attempting to sell in that mode. The determination of the question was essential to the inquiry involved in the fourth issue, which was found adversely to the plaintiffs; and it having been found under instructions which precluded the jury from determining it, the verdicts for that cause must be set aside.

The views which have been suggested upon this question dispose of the other question arising upon the motion of the plaintiffs for judgment, notwithstanding the verdict upon the fourth issue.

The issue, in the form in which it is presented by the averments of the plea, is the same in substance as if the plea had alleged that the plaintiffs did not, within a reasonable time after making efforts to sell, give notice to the defendants of their failure. The plea alleges that the notice was not given within a reasonable time after the covenant was executed, and in this reasonable time is included such time after the execution of the covenant as would be requisite for making the efforts to sell, and such further time as would be covered by the plea in the other form. The issue would be substantially the same in either form, and such must have been the view of the court in the decision upon the general demurrer to this plea, as reported in 3 Foster 471. The issue, therefore, is not an immaterial one.

*Verdicts set aside and a new trial granted.*